**In re MOORE CONSTRUCTION, INC., Debtor.**

**Bankruptcy No. 496–40047–MT–11.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

March 12, 1997.

St. Clair Newbern, III, Law Offices of St. Clair Newbern, III, Ft. Worth, TX, for Moore Construction, Inc.

Henry Seals, Fort Worth, TX, for Trustee.

### *MEMORANDUM OPINION*

MASSIE M. TILLMAN, Bankruptcy Judge.

On the 10th day of February, 1997, the Court considered the Motions to Convert filed by Darr Equipment, Inc. ("Darr") and the Internal Revenue Service ("IRS"). This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1334 and 1408. Furthermore, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This memorandum opinion shall serve as findings

of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

This opinion addresses the issue of whether this Chapter 11 Bankruptcy should be converted to a Chapter 7 for, among other reasons, non-payment of employment taxes. Due to the fact-intensive nature of this issue, a brief statement of the essential facts is in order.

### Factual Background

On January 2, 1996, Moore Construction, Inc. ("Debtor") filed a voluntary Chapter 11 petition. Debtor is a construction company, with several employees, that operated post-petition as debtor-in-possession. At the time of filing, Debtor owed approximately $160,-000.00 in employment taxes, penalties and interest. Debtor was also indebted to Darr for over $40,000.00, and to various other creditors in the approximate amount of $500,-000.00.

On April 30, 1996, Debtor filed its Plan of Reorganization and Disclosure Statement. Due to several objections, Debtor postponed the Disclosure Hearing until July 11, 1996, to allow adequate time to amend the Disclosure Statement. However, as of February 10, 1997, Debtor had not filed its Amended Disclosure Statement.

In further disregard of Chapter 11 procedure, and even though monthly operating reports are due *monthly*, the Monthly Operating Reports for September, October and November were tardily filed on January 30, 1997.

On October 18, 1996, IRS filed a Request for Payment of Administrative Expenses ("the Request") for post-petition employment taxes, penalties and interests totaling over $123,000.00. Debtor did not object to the Request. On the day of hearing, Debtor had not paid any post-petition employment taxes, and owed over $190,000.00 in post-petition employment taxes, penalties and interest, an amount which grew every day.

In addition to the $190,000.00 in post-petition taxes, penalties and interest, Debtor accumulated an additional $600,000.00 in post-petition debt. When added to the pre-peti-tion debt, Debtor owed, at the time of hearing, over $1,400,000.00.

Darr and IRS separately filed Motions to Convert to Chapter 7, both contending 1) Debtor has not paid employment taxes, 2) Debtor's Plan is not feasible because over $200,000.00 would have to paid up-front in administrative claims, and 3) the proposals in Debtor's Plan of Reorganization are unrealistic.

### DISCUSSION

In their respective Motions, Darr and IRS both make blanket allegations of bad faith, however, at the hearing, there was little or no evidence presented as to bad faith in filing the Petition. Even though the Debtor may have acted with the best of intentions, the United States Supreme Court has held, "However honest in its efforts the debtor may be, and however sincere its motives, the Court is not bound to clog its docket with visionary or impractical schemes for resuscitation". *Tennessee Publishing Co. v. American National Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1930). Consequentially, the lack of bad faith does not permit a debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.

In determining whether a Chapter 11 Bankruptcy should be converted, Section 1112(b) of Title 11 of the United States Code provides three applicable situations which, upon finding, gives cause for converting a case to Chapter 7. The three applicable subsections will be examined individually.

First, a case may be converted when the estate is continually decreasing in value and there is little hope for rehabilitation pursuant to 11 U.S.C. § 1112(b)(1), which states:

(b) ... on the request of a party in interest ..., the court may convert a case under this chapter to a case under chapter 7 of this title, for cause, including—

(1) continuing loss to or diminution of the estate and absence of of a reasonable likelihood of rehabilitation;

In determining whether there is a continuing loss to or diminution of the estate, courts must look beyond a debtor's financial

statements and make a full evaluation of the present condition of the estate. *In re Economy Cab & Tool Co.,* 44 B.R. 721 (Bankr. D.Minn.1984). For example, in a similar fact pattern, unpaid post-petition taxes of $500,-000.00 evidenced continuing loss to or diminution of an estate. *In re Telemark Management,* 41 B.R. 501 (Bankr.W.D.Wis.1984).

Here, Debtor has not paid any post-petition employment taxes, which has led to a large, continuously accumulating debt. Although the failure to pay employment tax is not the only reason for this conversion, the Court is strongly influenced by the mounting post-petition tax debt, which will soon double the pre-petition tax debt. Furthermore, while Debtor's financial statements indicate a profit and Debtor is showing a large accounts receivable, there appears to be no collection of these accounts occurring, and whatever is collected in the future is already owed, leaving zero profit. The non-payment of post-petition tax debt, combined with financial statements that show a current inability to make a profit constitutes a continuing loss to or diminution to the estate pursuant to § 1112(b)(1).

The failure to pay post-petition employment taxes alone is cause for converting a case to Chapter 7. When a Debtor has this much tax debt, which is continually accruing, and cannot show the ability to produce a cash profit, it becomes apparent that the Debtor is gambling with the creditors' interests.

■ Secondly, a case may be converted for unreasonable delay by the debtor pursuant to 11 U.S.C. § 1112(b)(3), which states:

(b) ... on the request of a party in interest ..., the court may convert a case under this chapter to a case under chapter 7 of this title, for cause, including—

(3) unreasonable delay by the debtor that is prejudicial to creditors;

Courts have held the failure to pay post-petition employment taxes is also an unreasonable delay within the meaning of § 1112(b)(3) and, therefore, cause for conversion or dismissal. *In re Berryhill,* 189 B.R. 463 (N.D.Ind.1995) and *In re Santiago Vela,* 87 B.R. 229 (D.Puerto Rico 1988). In addition to the complete failure to pay employ-

ment taxes, Debtor has also unreasonably delayed in the filing of its Monthly Operating Reports. The September Report was filed on January 30, 1997, over three months late. The October and November Reports were also tardily filed on January 30, 1997. The Court finds and concludes Debtor's failure to pay employment taxes and timely file the Monthly Operating Reports is an unreasonable delay pursuant to § 1112(b)(3).

■ Thirdly, the court may convert a case based upon the inability to effectuate a plan pursuant to 11 U.S.C. § 1112(b)(2), which states:

(b) ... on the request of a party in interest ..., the court may convert a case under this chapter to a case under chapter 7 of this title, for cause, including—

(2) inability to effectuate a plan;

In order for a Debtor to effectuate a plan pursuant to § 1112(b)(2), Debtor will be required to satisfy 11 U.S.C. § 507(a)(1). 11 U.S.C. § 1129(a)(9)(A) (West 1993). Consequentially, a Debtor will be required to pay the administrative claims, in full, on the effective date. 11 U.S.C. § 507(a)(1) (West 1993). Here, Debtor will have to pay in excess of $200,000.00 on the first day of confirmation. According to the late financial statements, Debtor would be unable to pay the amount necessary to satisfy the administrative claims.

Although over six months have passed, Debtor has yet to file its Amended Disclosure Statement. Debtor received many objections to its Original Disclosure Statement and may or may not be able to obtain approval of the Amended Disclosure Statement. Without the Disclosure Statement, the Court is at a loss to evaluate the ability to effectuate approval, and the Court finds no reason to speculate at the creditors' peril.

At the hearing, the Debtor suggested that the Court appoint an examiner to "look into Debtor's finances"; however, the Court believes that the Debtor's finances have been looked into long enough. Appointing an examiner may be appropriate in some cases, here, further examination will not remedy the problem but will only serve to exacerbate it. The Debtor is currently over $1,400,-

000.00 in debt, with hundreds of thousands of dollars of employment tax debt; and therefore, the Court finds no reason to allow this debt to increase and further harm the creditors while the Debtor continues its exercise in tire kicking.

### CONCLUSION

As stated above, the Court finds cause to convert this case to a Chapter 7. The failure to pay the post-petition tax debt, the failure to amend the Disclosure Statement and effectuate a Plan of Reorganization, the failure to timely file monthly operating reports, the failure to sufficiently pay accounts payable, the failure to sufficiently receive accounts receivable, and the fact that Debtor would have to pay over $400,000.00 on the effective date of the plan, coupled with the overall negative cash flow for 1996, is cause for conversion to Chapter 7 as it is in the best interest of the creditors. Some of these factors *alone* provide cause for conversion; therefore, such a combination makes conversion the appropriate solution.

Based upon the foregoing Opinion, this Court GRANTS the Motion(s) to Convert.

All further relief not expressly granted herein is denied. This Court will enter an Order in conformity with the Memorandum Opinion.