In re Jesaye **KORNHAUSER**, Debtor.

**Bankruptcy No. 94–B–21061.**

United States Bankruptcy Court, S.D. New York.

April 11, 1995.

---

The Law Office of Shmuel Klein by Shmuel Klein, Spring Valley, NY, for debtor.

Shapiro & Kreisman by Michael Resnikoff and Douglas Dominianni, Melville, NY, for Secured Creditor.

### MEMORANDUM DECISION GRANTING MOTION FOR ANNULMENT OF THE AUTOMATIC STAY

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Before me are three motions, in order of service and filing: (1) the secured creditor's motion for annulment of the automatic stay pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001 so as to validate the foreclosure sale held on June 20, 1994, (2) the Debtor's motion pursuant to 11 U.S.C. § 1112(b) to dismiss the Chapter 11 case and (3) the Debtor's motion pursuant to 11 U.S.C. §§ 105(a) and 363 for authorization to sell the property which was the subject of the June 20, 1994 foreclosure sale. For the following reasons, the first and second motions are granted and the third motion is moot.

### BACKGROUND

The Debtor is indebted to the creditor, GE Capital Mortgage Services, Inc. (the "Creditor") pursuant to a note dated July 25, 1990 in the principal sum of $337,500 secured by a mortgage on a two-family residence at 3 Walter Drive, Monsey, New York (the "property"). The Creditor's motion recites that the Debtor has defaulted on payment under the note by failing to make any payment due

since March 1991. In May 1991 the Creditor commenced a foreclosure action and obtained a judgment of foreclosure in November 1991 in the amount of $370,809.58, and a foreclosure sale was scheduled for March 11, 1992. On March 10, 1992 the Debtor filed his first Chapter 13 petition, thereby staying the foreclosure sale pursuant to § 362(a) of the Bankruptcy Code. On September 1, 1991 the first filing was dismissed on the Chapter 13 trustee's motion, and a second foreclosure sale was scheduled for November 13, 1992. On November 12, 1992 the Debtor filed his second Chapter 13 petition, and the foreclosure sale was again stayed. On May 19, 1993 the Chapter 13 trustee's motion to dismiss the second filing was granted, and the foreclosure sale was again rescheduled, this time for September 8, 1993. On September 7, 1993 the Debtor filed his third Chapter 13 case and, again, the foreclosure sale was stayed. The third Chapter 13 case was dismissed on March 4, 1994 on motion of the Chapter 13 trustee, which mooted the Creditor's then pending motion to dismiss with prejudice. The Creditor then scheduled its fourth foreclosure sale for June 20, 1994. The debtor filed his fourth Chapter 13 petition on June 17, 1994. The Creditor asserts that it was not aware of this filing until after the foreclosure sale had occurred and the referee's deed had been signed on June 20, 1994. There is no evidence in the record that the Creditor acted in willful disregard of the automatic stay resulting from the Debtor's June 17, 1994 filing, and the Creditor has taken no further steps with regard to the property, other than to file the instant motion to annul the stay. The Debtor converted this case to Chapter 11 on August 4, 1994.

The Creditor seeks annulment of the automatic stay on the grounds that: (1) the Debtor acted in bad faith by filing serial Chapter 13 cases for the sole purpose of frustrating the Creditor's right to foreclose, (2) the Debtor's fourth filing under Chapter 13 was void when the case was filed because the

Debtor's noncontingent, liquidated, secured debts exceeded the limit of $350,000 under 11 U.S.C. § 109(e) as then in effect, (3) the Debtor failed to provide adequate protection and had no equity in the property, and the property was not necessary to an effective reorganization of the Debtor. The Creditor's written appraisal dated May 26, 1994 estimated the probable sale price at $290,000, which is well below the current secured indebtedness of $505,000.

In his initial motion to dismiss, the Debtor asserted that, due to loss of employment, he would be unable to propose a plan of reorganization; that he had an offer to sell the property at fair market value and pay the Creditor the fair market price; and that it was in the best interest of the Creditor that the petition be dismissed so that the sale could go forward. In the Debtor's second motion, for authorization of sale, the Debtor annexed a proposed contract of sale for $225,000, although the affirmation in support of the motion asserts that the sale price is $210,000, with proposed net sale proceeds for the Creditor of $192,835. Also annexed to the Debtor's affirmation are a letter "To whom it may concern" estimating the value of the property at approximately $250,000 and the Debtor's proposed plan under Chapter 13 dated June 16, 1994.

### DISCUSSION

Based upon the facts set forth in the Creditor's motion which, with one exception *, are not contested by the Debtor, I shall grant the Creditor's motion to annul the automatic stay incident to the Debtor's June 17, 1994 petition.

Section 362(d) the Bankruptcy Code states, in pertinent part:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as

---

* In paragraph 2 of its motion, the Creditor states: "The Debtor has defaulted on the payments under the Note by failing to make any payment due since March 1991." In his Affirmation in Opposition to Motion for Annulment, the Debtor states in paragraph 4: "What is conspicuously absent from GE's long diatribe against me is the fact that they were paid post-petition payments and had now [sic] complaint whatsoever." The conflict, if it is a conflict, need not be resolved. The Debtor does not dispute the Creditor's assertion that the total debt due and owing is now approximately $505,666.

by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

or"

■ Every element required for granting relief from the stay in this case under both subsections (1) and (2) of subsection (d) is present in this case. With respect to subsection (1) "for cause," there can be no question of the lack of "adequate protection." The Debtor has made no payments or de minimis payments since March 1991 which, in these circumstances, constitutes lack of adequate protection. *See, In re Kennedy,* 79 B.R. 950, 952 (Bankr.M.D.Ga.1987). While an equity cushion can serve as adequate protection in certain circumstances, *In re Elmira Litho, Inc.,* 174 B.R. 892, 903 (Bankr.S.D.N.Y.1994), the purported appraisals of both parties acknowledge that the collateral is more than $200,000 under water. The Debtor argues that his proposed sale netting the Creditor $192,835 is the highest price obtainable and is in the best interests of the Creditor. But such a determination is for the Creditor to make. The Creditor is entitled by contract and by statute to foreclose, to bid in the property at the foreclosure sale, to renovate the property if so advised and to market the property in its own manner and on its own time to achieve the best price possible. It is not for the Debtor or the Court to decide that the Creditor would be better off accepting the proceeds of the Debtor's proposed sale.

■ With further reference to Section 362(d)(1), it is well settled that a bad faith filing constitutes "cause" for relief from the automatic stay. *In re Laguna Associates,* 30 F.3d 734 (6th Cir.1994); *Manhattan King David Restaurant, Inc. v. Levine,* 163 B.R. 36 (S.D.N.Y.1993). Four Chapter 13 filings on the eve of a foreclosure sale, three dismissals on the trustee's motion evidently for failure to comply with the requirements under Chapter 13, the failure of the Debtor to make any colorable attempt to comply with his obligations under either Chapter 13 or Chapter 11 subsequent to his fourth petition and the Debtor's failure to make any substantial payments on his secured obligation for four years constitute ample factual grounds for the finding, which I make, that the Debtor did not act in good faith in filing his petition under Chapter 13 on June 17, 1994.

■ The requirements of § 362(d)(2)(A) and (B) are also met. There is no dispute that the Debtor does not have any equity in the property. With respect to the requirement in subsection (B) that "such property is not necessary to an effective reorganization," the Debtor asserts in his Affirmation in Opposition to Motion Annulment "I cannot reorganize my affairs without a roof over my head. This property is necessary for my reorganization." However, the record here belies the suggestion that a meaningful reorganization of the Debtor's financial affairs is in prospect. See *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–6, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) ("To establish that an effective reorganization is in prospect, there must be a reasonable possibility of a successful reorganization within a reasonable time.") The statutory test is whether the property is necessary for a reorganization, and subsection (B) cannot be invoked simply to maintain a dwelling place for a debtor, however necessary that may be from a personal standpoint. It is unfortunate that a debtor may lose his or her home to foreclosure, but the bankruptcy laws do not grant debtors the right to remain in a residence which they cannot afford and for which they are not paying.

■ Having concluded that relief from the stay is appropriate, I turn next to which form that relief should take. Section 362(d) authorizes the Court to grant relief from the stay "by terminating, annulling, modifying or conditioning such stay." 11 U.S.C. § 362(d). It is my conclusion that the facts already recit-

ed justify the relief of annulling the stay. But there are additional grounds present here which warrant annulment, rather than terminating the stay prospectively. The Chapter 13 petition was improper and invalid when filed on June 17, 1994, because the Debtor's secured indebtedness far exceeded the $350,000 limit prescribed in 11 U.S.C. § 109(e) as then in effect, and this fact was known to both the Debtor and his counsel. Indeed, counsel acknowledged during oral argument that he knowingly filed under Chapter 13 because the filing fee was less than under Chapter 11. This tactic, in the interest of a modest economy, simply underscores the Debtor's lack of good faith, and it undermines the validity of the Chapter 13 filing. *See, In re Pappalardo*, 109 B.R. 622, 626 (Bankr.S.D.N.Y.1990). Moreover, having no knowledge of the Debtor's filing on June 17, the Creditor unwittingly proceeded with the foreclosure sale on June 20, 1994. In view of my findings and conclusions in this decision, it does not make sense to require the Creditor to incur further delay and expense of republishing and conducting another foreclosure sale.

Accordingly, the Creditor's motion is granted, and the automatic stay incident to the Debtor's Chapter 13 petition filed on June 17, 1994 is hereby annulled *nunc pro tunc*. As a consequence, the Creditor's foreclosure sale on June 20, 1994 is valid. The Debtor's motion by notice dated November 22, 1994 to dismiss his Chapter 11 case is granted, provided such dismissal is subject to 11 U.S.C. § 109(g)(2). The Debtor's motion by notice dated January 13, 1995 for authorization of sale is denied as moot. Counsel for the Creditor will settle an order disposing of the motion for annulment. Debtor's counsel will settle orders disposing of the Debtor's motions.

